**Coleman BROWN, as Administrator of the Estate of Jennie Pittie Brown, Deceased**

v.

**UNITED STATES of America.**

No. 3–83–0758.

United States District Court, M.D. Tennessee, Nashville Division.

Oct. 21, 1985.

W.W. Berry, Carter R. Todd, Nashville, Tenn., for plaintiffs.

Joe B. Brown, U.S. Atty., Nashville, Tenn., Gregory L. Nelson, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

WISEMAN, Chief Judge.

This is an action brought under 28 U.S.C. § 1346(a)(1) for recovery of $8,430.40 plus interest and costs which plaintiff Coleman Brown, the administrator of the estate of his deceased sister, alleges was erroneously assessed and collected by the Internal Revenue Service (IRS) as penalties for late filing of an estate tax return and late payment of tax. Having considered the evidence adduced at trial and the arguments of counsel, the Court holds in favor of the plaintiffs for the reasons enumerated herein.

### I. *Factual Background.*

Ms. Jennie Pittie Brown died on August 6, 1981. Her brother, Mr. Coleman Brown, was appointed administrator of her estate on November 12, 1981. Prior to Ms. Brown's death, Mr. Brown had served as her conservator. As such, he retained attorney Claude Callicott to handle legal matters concerning the conservatorship. Mr. Brown knew that Mr. Callicott was very familiar with Ms. Brown's legal affairs because Mr. Callicott had represented her for several years. He also knew that Ms. Brown had spoken highly of Mr. Callicott's abilities. When he was appointed administrator, Mr. Brown again retained Mr. Callicott to handle the estate matters. Mr. Callicott, who had had considerable experience in handling estate matters during his fifty-five years of practice, understood that he would be responsible for the preparation and filing of all tax returns for the estate. Mr. Callicott was aware that the federal estate tax return for Ms. Brown's estate was due on May 6, 1982, nine months after Ms. Brown's death, pursuant to 26 U.S.C. § 6075. He did not, however, inform Mr. Brown as to the due date for filing the return.

During the early part of 1982, Mr. Callicott began experiencing severe chest pains. Around April 24, 1982, Mr. Callicott was hospitalized in order for tests to be performed in connection with his chest pains. Shortly after being discharged, Mr. Callicott suffered urinary problems and was again hospitalized on April 26, 1982. During this stay in the hospital, Mr. Callicott underwent prostate surgery and was treated for his heart condition. He was released from the hospital on May 3, 1982, three days before the federal estate tax return was due.

After his release, Mr. Callicott eventually returned to his office and resumed work on a limited basis, gradually increasing his workload over a period of several weeks. Mr. Callicott filed the federal estate tax return for Ms. Brown's estate on August 5, 1982. Pursuant to 26 U.S.C. § 6651(a)(1) and (2), the IRS subsequently assessed penalties against the estate for late filing of the estate tax return and for late payment of estate tax due. Plaintiff has paid $8,430.40 in satisfaction of the penalty and interest thereon.

Mr. Brown is 78 years of age and has a high school education. He is an electrician by trade but has been retired for over twenty years. Mr. Brown has had little or no experience with tax matters and, although he had served as conservator, he had never served as executor or administrator of an estate prior to his appointment as administrator for his deceased sister's estate. Mr. Brown's health has deteriorated over the last ten years. During 1982 in particular, he had been under the care of several doctors and had been taking medication for his high blood pressure problems.

Mr. Brown first learned of Mr. Callicott's illness when he called the attorney's office and was informed by a secretary that the attorney had been hospitalized. Mr. Brown did not retain another attorney to file the estate tax return after he received this information. He testified, however, that if he had known the due date was approaching, he would have done so. Mr. Callicott is a sole practitioner, and he testified that his secretary had no authority to surrender his files to another attorney without his permission. He also testified that none of the attorneys who share office space with him handled tax matters, nor did they have the authority to gain access to his files without his consent.

## II. *Legal Discussion.*

Section 6651(a)(1) reads in pertinent part:

In case of failure ... to file any return ... on the date prescribed therefor ..., *unless it is shown that such failure is due to reasonable cause and not due to willful neglect,* there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.... (emphasis added).

The elements which must be present to constitute "reasonable cause" for a late filing are a question of law, but whether these elements are present in a given situation is a question of fact. *U.S. v. Boyle,* 469 U.S. ——, —— n. 8, 105 S.Ct. 687, 692 n. 8, 83 L.Ed.2d 622, 630 n. 8 (1985). The following discussion of reasonable cause is provided by the applicable Treasury Regulation:

[A] taxpayer who wishes to avoid the addition to the tax for failure to file a tax return or pay tax must make an affirmative showing of all facts alleged as a reasonable cause for his failure.... If the taxpayer exercises ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause. A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an

undue hardship ... if he paid on the due date.

26 C.F.R. § 301.6651–1(c)(1) (1984).

Plaintiff contends that the reason for his untimely filing constitutes reasonable cause within the meaning of section 6651(a)(1). Specifically, plaintiff asserts that he was incapable of meeting the standard of ordinary business care and prudence necessary to cope with the emergency situation created by his attorney's unexpected illness shortly before the due date of the return. In addition, plaintiff argues that the illness of a taxpayer's attorney is tantamount to the illness of a member of the taxpayer's immediate family, noting that a late filing due to the latter situation is expressly exempted from penalty by the IRS. While the government has conceded that the failure to file the return on time was not due to "willful neglect", it argues that the plaintiff has not established reasonable cause. The government maintains that plaintiff was capable of meeting the required standard of ordinary business care and prudence. In addition, the government contends that this case is controlled by *United States v. Boyle*, 469 U.S. ——, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985), in which the Supreme Court held that a taxpayer's reliance on his attorney to timely file a tax return does not constitute "reasonable cause" for a late filing under section 6651(a)(1).

In *Boyle*, the taxpayer had engaged the services of an attorney to assist him in performing the duties of executor for the estate of his deceased mother. In responding to his client's inquiries concerning the estate tax return, the attorney repeatedly assured the taxpayer that the return would be filed on time. Due to a clerical oversight in omitting the filing date from his master calendar, however, the attorney missed the deadline and filed the return three months late. *Boyle*, 469 U.S. at ——, 105 S.Ct. at 689, 83 L.Ed.2d at 626. In an attempt to articulate a "rule with as 'bright' a line as can be drawn," the Court ruled that a taxpayer cannot escape the late filing penalty by relying on his attor-

ney to timely file the return. 469 U.S. at ——, 105 S.Ct. at 692, 83 L.Ed.2d at 629.

The Court expressly left open the issue of whether reasonable cause is established when a taxpayer relies on an attorney because he is incapable of meeting the criteria of ordinary business care and prudence set forth in the regulations. In footnote 6, the Court stated in part:

The principle underlying the IRS regulations and practices—that a taxpayer should not be penalized for circumstances beyond his control—already recognizes a range of exceptions which there is no reason for us to pass on today. This principle might well cover a filing default by a taxpayer who relied on an attorney or accountant because the taxpayer was, for some reason, incapable by objective standards of meeting the criteria of 'ordinary business care and prudence.' In that situation, however, the disability alone could well be an acceptable excuse for late filing.

But this case does not involve the effect of a taxpayer's *disability*; it involves the effect of a taxpayer's *reliance* on an agent employed by the taxpayer, and our holding necessarily is limited to that issue rather than the wide range of issues that might arise in future cases under the statute and regulations. Those potential future cases are purely hypothetical at the moment and simply have no bearing on the issue now before us. The concurring opinion seems to agree in part ...

469 U.S. —— at n. 6, 105 S.Ct. at 692 n. 6, 83 L.Ed.2d at 629–30 n. 6.

As noted by the Court, four justices concurred in the opinion specifically to "underscore the importance of an issue that the Court expressly leaves open." 469 U.S. at ——, 105 S.Ct. at 694, 83 L.Ed.2d at 632 (Brennan, J., concurring). Writing for the concurring justices, Justice Brennan maintained that the ordinary business care and prudence standard is "applicable only to the 'ordinary person'—namely, one who is physically and mentally capable of knowing, remembering, and complying with a

filing deadline." 469 U.S. at ——, 105 S.Ct. at 694, 83 L.Ed.2d at 632. The concurrence noted that the Court's holding did not necessarily apply to taxpayers who were able to demonstrate that, for reasons of incompetence, infirmity, senility, mental retardation or other causes, they understandably are unable to meet the standard of ordinary business care and prudence. 469 U.S. at ——, 105 S.Ct. at 694–95, 83 L.Ed.2d at 632–33. The concurrence compared this situation with those circumstances in which the IRS expressly excuses the delay, such as the illness of a member of the taxpayer's immediate family, and noted that "[t]he common thread running through all these unfortunate situations is that the taxpayer, for reasons beyond his control, has been unable to exercise ordinary business care and prudence." 469 U.S. at —— n. 3, 105 S.Ct. at 695 n. 3, 83 L.Ed.2d at 633 n. 3.

### III. *Application*

The Court concludes that the holding in *Boyle* does not govern the instant case. Rather, the Court finds that Mr. Brown falls within the category of taxpayers addressed in footnote six of the *Boyle* opinion and further discussed by the concurrence. Having observed the plaintiff throughout the trial, the Court finds that, due to his age, health and lack of experience, Mr. Brown was not physically and mentally capable of complying with the filing deadline for the estate tax return. Unlike the plaintiff in *Boyle*, Mr. Brown relied on his attorney because he was incapable of meeting the criteria of ordinary business care and prudence required by the regulations. Under these circumstances, the Court agrees with the *Boyle* concurrence that a taxpayer who is unable to exercise the required standard should not be penalized for a late filing.

The government contends that Mr. Brown's retention of Mr. Callicott when Mr. Brown was appointed administrator demonstrates that he was capable of hiring a second attorney to file the estate tax return once he learned of Mr. Callicott's illness. In addition, the government relies on a statement made by Mr. Brown during trial in which he indicates that he would have hired someone else to file the return if he had known the filing deadline was approaching. While Mr. Brown's desire to assume the responsibilities of the typical taxpayer is commendable, this desire alone does not convince the Court that he was able to fulfill that responsibility in light of the contrary evidence adduced during the remainder of his testimony and that of Mr. Callicott. The same factors underlying this Court's determination that Mr. Brown was incapable of exercising ordinary business care and prudence also lead this Court to conclude that he was unable to seek out, hire and arrange to provide another attorney with sufficient information about the decedent's estate to allow that attorney to file the return or to obtain an extension of time to do so during the two-week period prior to the filing deadline when he learned Mr. Callicott was ill. In short, the Court agrees with the plaintiff that due to his age, health and lack of experience, he was unable to cope with the emergency situation created by the unexpected illness of his attorney shortly before the return was due. Furthermore, the evidence indicates that Mr. Callicott's employment primarily resulted from his having represented Mr. Brown during the conservatorship, and from having represented the decedent during her lifetime. Thus, Mr. Brown had been spared the oft times frustrating task of having to evaluate the abilities of several qualified attorneys, and then of having to provide the attorney hired with all necessary information about the decedent's affairs. Thus, Mr. Brown's retention of Mr. Callicott does not necessarily indicate that he was able to hire a second attorney on his own.

For the foregoing reasons, the Court holds that plaintiff has met the burden of showing reasonable cause for failing to timely file the estate tax return and to timely pay the federal estate taxes. The Court directs that judgment be entered for plaintiff in the amount of $8,430.40 with interest thereon. Each party shall bear its own costs in this matter.